HOWARD, APPELLANT, *v.* DELCO DIVISION OF GENERAL MOTORS CORPORATION, INC. ET AL., APPELLEES.

(No. CA 10460—Decided November 17, 1987.)

*James P. Jones,* for appellant.

*Thomas L. Czechowski, Thomas H. Pyper* and *Michael E. Solimine,* for appellees.

FAIN, J. This is an appeal from a summary judgment granted in favor of defendants-appellees. The issue in this case is whether an employer has a duty to an obviously intoxicated employee not to send him home from work when the employer did nothing to encourage its employee to become intoxicated. Although, assuming a state of facts that gives plaintiff-appellant the benefit of every reasonable inference, we are inclined to the view that Delco Division of General Motors Corporation, Inc. ("Delco") exercised deplorable judgment in sending plaintiff's decedent home while he was highly intoxicated, we agree with Delco that it had no duty to protect its employee from the obvious probable consequences of his becoming highly intoxicated while at work. Accordingly, the judgment of the trial court will be affirmed.

I

Plaintiff's decedent, Alfred F. Howard, Sr., was about halfway through the second shift at Delco's Plant 18 one evening in June when he left work by automobile. The circumstances surrounding decedent's departure from work are disputed. Delco's affidavits aver that the decedent approached the acting general supervisor and asked permission to go home because he was too upset to work as a result of a disagreement with

another supervisor two days earlier. Delco's affidavits aver that there was nothing in the decedent's manner to indicate that he was under the influence of alcohol.

Appellant Christine Howard's affidavits tell a different story:

"Affiant saw and talked with Alfred F. Howard, Sr. during the first half of the shift and observed that the said Alfred F. Howard, Sr. was highly intoxicated and was 'in bad shape,' hardly able to stand up and walk, and appeared to be on the verge of collapse, however he was still able to walk." (Affidavit of Jerome R. Kelley.)

"Affiant says that the said Alfred F. Howard, Sr. was in an extremely high state of intoxication, which was obvious to those around him because he was hardly able to stand up, was bumping into things as he walked and smelled strongly of alcohol.

"Affiant further says that as she and the said Alfred F. Howard, Sr. were having lunch, they were approached by a foreman, Jack Roberts, who said he wanted to see Mr. Howard in his office, and Mr. Howard did get up and go to the office with Mr. Roberts. Affiant had finished her lunch and returned to work when Mr. Howard reappeared and stated that the General Foreman, Jerry Brown, had also talked to him, smelled alcohol on him, and that they were sending him home.

"Affiant further says that she ha[d] seen * * * Alfred F. Howard, Sr. on the job in a state of intoxication on prior occasions, but had never seen him as drunk and in such bad shape as he was on June 16, 1986." (Affidavit of Christine A. Ward.)

Regardless of whose idea it was that the decedent, before the end of his shift, should leave his place of work that evening, it is clear that he did so. While making a turn from Woodman Drive to State Route 35, the decedent's vehicle collided with a guard rail. After ten days of intensive care, the decedent perished as a result of the injuries he sustained in the collision.

Christine Howard, the decedent's widow, averred, in her affidavit in opposition to Delco's motion for summary judgment, as follows:

"Affiant says that the said Alfred F. Howard, Sr. was a severe alcoholic, that he drank alcoholic beverages regularly, and in large quantities, and was known to have been intoxicated on the job on several occasions; that on at least one occasion prior to June 16, 1986 he was sent home from the job for being intoxicated, at which time the personnel [sic] of defendant Delco called Mr. Howard's home and requested a family member [to] come and get him because he was in no condition to drive." (Affidavit of Christine Howard.)

Finally, appellant Howard submitted an affidavit by Walter J. Frajola, Ph.D., an expert on the effects of alcohol on humans. In his affidavit, Dr. Frajola averred as follows:

"* * * [S]hortly * * * [after decedent had his automobile accident,] on admission to the Miami Valley Hospital a blood alcohol analysis revealed a plasma ethanol concentration of 389 mg/dL * * *[.] [I]n the scientific community such concentration denotes a state of alcoholic influence between stupor and coma."

Dr. Frajola's affidavit concluded as follows:

"Further, Affiant states it is his opinion:

"1. that an individual with such a high ethanol concentration would have exhibited signs of intoxication obvious to an average person,

"2. that such signs and symptoms would have included marked muscular incoordination, inability or difficulty in standing or walking, im-

paired mental function and rational judgment,

"3. and that these effects of alcohol would have been present and without doubt evident for a considerable time prior to the accident."

The trial court granted Delco's motion for summary judgment, and Howard appeals.

## II

Howard's sole assignment of error is as follows:

"The trial court committed error prejudicial to the substantial rights of appellant in granting the motion of appellees for summary judgment."

Delco concedes, in view of our decision in *Cox* v. *Alloyd Insulation Co., Inc.* (June 22, 1987), Montgomery App. No. CA 10190, unreported, at 8-13, that the test for determining whether Delco is liable is the test articulated in *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 90, 15 OBR 246, 472 N.E. 2d 1046. In *Jones,* it was held that an employer is liable for a tortious act committed with the intent to injure his employee or for a tortious act committed with the belief that injury is substantially certain to occur. We have interpreted this standard as requiring that: (1) the employer perceived the potential danger to the employee; and (2) harm was substantially certain to occur as a result. *Maclin* v. *Dayton & Western Motors, Inc.* (Sept. 12, 1985), Montgomery App. No. CA 9155, unreported.

In applying the *Jones* standard, we must construe the evidence most strongly in Howard's favor, and the summary judgment cannot be sustained unless it appears from the evidence that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ. R. 56(C).

Although the affidavits presented in support of, and in opposition to, the motion for summary judgment were conflicting, the affidavits presented by Howard in opposition to the motion, if credited, together with inferences that can properly be drawn therefrom, could lead a reasonable mind to conclude that Delco, through its agent, sent the decedent home knowing that he was so drunk that an automobile accident was substantially certain to occur.

The difficult issue presented in this appeal is whether Delco owed any duty to the decedent employee to protect him, by not sending him home, from the obvious probable consequences of his having become thoroughly intoxicated. We are not satisfied that the employment relationship in Ohio is so paternalistic as to impose a duty upon an employer to protect its obviously intoxicated employee from the risk that the employee will have an automobile accident after leaving work when the employee brought that risk upon himself through his own conduct, with no help or encouragement from his employer.

Howard relies heavily upon *Otis Engineering Corp.* v. *Clark* (Tex. 1983), 668 S.W. 2d 307, in which the Supreme Court of Texas, in a five-four decision, held that the employer in that case had a duty to two members of the general public who were killed as a result of a collision involving an automobile being driven by an employee who had been sent home under circumstances quite similar to those in this case. Four of the justices would not have held that the employer owed any duty, even to the public at large, to prevent or to discourage its employees from driving home from work while intoxicated. The majority opinion, while finding the existence of such a duty, noted that the duty was one owed to innocent members of the public:

"* * * 'As between an entirely in-

nocent plaintiff and a defendant who admittedly has departed from the social standard of conduct, if only toward one individual, who should bear the loss?' * * *'' *Otis Engineering Corp.* v. *Clark, supra,* at 310, quoting from Prosser, Law of Torts (4 Ed. 1971), at 257.

We do not reach the question posed in *Otis Engineering Corp.* v. *Clark, supra, i.e.,* whether an employer in Delco's position owes a duty to the public at large not to send its employee home in a state of intoxication, without protecting against the likelihood that he will get behind the wheel of his automobile and drive home. We merely hold that Delco owed no such duty to its employee.

*Leppke* v. *Segura* (Colo. App. 1981), 632 P. 2d 1057, also cited by Howard, is similarly distinguishable. In *Leppke,* the defendants, who had enabled an obviously drunken person to drive by jump-starting his automobile, were held to have a duty to third persons for injuries sustained in a subsequent collision. The defendants' liability to the intoxicated motorist was not at issue.

Similarly, different issues are posed by situations where: (1) an employer who causes its employee to be in a potentially hazardous mental state, see *Robertson* v. *LeMaster* (W.Va. 1983), 301 S.E. 2d 563; and *Brockett* v. *Kitchen Boyd Motor Co.* (1968), 264 Cal. App. 2d 69, 70 Cal. Rptr. 136; or (2) a person with some control of the premises fails to protect others upon the premises from an obviously intoxicated person, see *Sylvester* v. *Northwestern Hosp. of Minneapolis* (1952), 236 Minn. 384, 53 N.W. 2d 17.

In this case, there is no issue involving Delco's potential liability to fellow employees or to members of the public coming upon its premises as a result of Delco's permitting an ob-

viously intoxicated employee to wander at large upon its premises. Nor did Delco cause Howard to become intoxicated.

In Ohio, courts have thus far declined to impose a duty upon social hosts to protect against the likelihood that a guest may become intoxicated and as a result, while driving home, injure a member of the general public. *Settlemyer* v. *Wilmington Veterans Post No. 49* (1984), 11 Ohio St. 3d 123, 11 OBR 421, 464 N.E. 2d 521. In *Settlemyer,* the Supreme Court held:

"* * * [W]e are of the opinion that any policy modifications which are designed to encompass the potential liability of social providers of intoxicating beverages should perhaps be deferred to the sound discretion of the legislature." 11 Ohio St. 3d at 127, 11 OBR at 425, 464 N.E. 2d at 524.

If social hosts have no duty to protect members of the general public from the likelihood of collision with automobiles being driven by their intoxicated guests on the way home, we do not think that employers have a duty to protect an employee who has become intoxicated, without encouragement or assistance from his employer, against the likelihood that he will have an automobile collision on the way home from work. In the absence of legislation providing for such a duty, the only basis for distinguishing the employer-employee duty from the social host-general public duty would imply a degree of paternalism in the employment relationship that we do not find to be present in Ohio.

### III

Howard's sole assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

WILSON and BROGAN, JJ., concur.