BELOW, et al., Appellants,

v.

DOLLAR GENERAL CORPORATION et al., Appellees.

[Cite as *Below v. Dollar Gen. Corp.*, 163 Ohio App.3d 694, 2005-Ohio-4752.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–05–08.

Decided Sept. 12, 2005.

Charles M. Murray, W. Patrick Muarry, William H. Bartle, and Thomas A. Mathews, for appellants.

D. Patrick Kasson and Robert V. Kish, for appellees.

ROGERS, Judge.

{¶ 1} Plaintiffs-appellants, Robert Below and Helen Below, appeal a judgment of the Marion County Court of Common Pleas, granting the motion for summary judgment filed by defendants-appellees, Dollar General and named employees (collectively, "Dollar General"). On appeal, appellants assert that the trial court erred in granting Dollar General's motion for summary judgment, that the trial court erred in denying their cross-motion for summary judgment, and that the trial court erred in not ruling on the issue whether Dollar General had intentionally injured Robert. Finding that a genuine issue of material fact exists as to whether Dollar General had the right to control the manner or means of Robert's employment, we reverse the judgment of the trial court.

{¶ 2} In February 2002, Robert was hired as a truck driver for U.S. Xpress ("U.S.X."). Robert was specifically hired by U.S.X. as a dedicated Dollar General driver, meaning that he hauled exclusively Dollar General merchandise. In April 2002, Robert was injured in the process of unloading merchandise at a Dollar General store in Marion, Ohio. As a result of the accident, Robert suffered from a herniated disk and was unable to work. Following the accident, all of Robert's medical expenses were paid through U.S.X.'s workers' compensation policy.

{¶ 3} In November 2002, appellants filed a complaint against Dollar General. Count one of the complaint alleged that Dollar General was negligent in its loading of its trailers, which was the proximate cause of Robert's injuries. Additionally, Robert alleged that he was entitled to punitive damages in count one. In count two, Helen, Robert's wife, claimed she was also entitled to damages. Subsequently, Dollar General filed its answer, and depositions were taken regarding Dollar General's negligence.

{¶ 4} In August 2004, Dollar General filed a motion for summary judgment. In its motion for summary judgment, Dollar General alleged that because it controlled the means and manner of Robert's job, Robert was an employee of Dollar General. Accordingly, Dollar General asserted that it was entitled to immunity under R.C. 4123.74. With its motion for summary judgment, Dollar General included U.S.X.'s guidelines for dedicated Dollar General drivers, along with the affidavits of Ron Dennis and William K. Farris.

{¶ 5} According to Dennis's and Farris's affidavits, U.S.X. had agreed to have its Dollar General drivers follow certain procedures mandated by Dollar General, which were embodied in the U.S.X. guidelines for dedicated Dollar General drivers. The U.S.X. guidelines for the dedicated Dollar General drivers were entitled "U.S. Xpress Dollar General Account Policies & Procedures." The guidelines set forth the delivery parameters, store delivery procedures, certain safety rules, backhaul procedures, on-time delivery expectations, and Dollar General seal procedures; stated that the driver was responsible for all Dollar General-owned equipment in his possession, which included the trailer and the delivery loads; and, finally, included instructions for unloading.

{¶ 6} Subsequently, appellants filed their motion in opposition to Dollar General's motion for summary judgment, claiming that Robert was an employee of U.S.X. and that Dollar General did not control the means or manner of his job. Additionally, appellants filed a cross-motion for summary judgment. With their cross-motion for summary judgment, appellants included the transportation-and-delivery agreement between U.S.X. and Dollar General. The transportation-and-delivery agreement specifically provided the following:

> Carrier [U.S.X.] shall perform transportation and delivery services provided for in this Agreement as an independent contractor and shall have exclusive control and direction of the persons operating the equipment or otherwise engaged in such services. Carrier [U.S.X.] assumes full responsibility for the acts and omissions of such persons and shall have exclusive liability for the payment of local, state, and federal payroll taxes or contributions to unemployment insurance or workers' compensation, old age pension, social security and similar obligations however titled for each person engaged in the performance of such services.

{¶ 7} In addition to their motion in opposition and cross-motion for summary judgment, appellants also filed the affidavits of Robert as well as U.S.X. employees Sherry Riner, Robert Reed, Justin Bailey, and Stuart Longmuir. Robert, Riner, Reed, Bailey, and Longmuir all stated that Dollar General did not control the manner or means of the day-to-day U.S.X. operations. Specifically, Riner, a U.S.X. dispatcher, stated that she was responsible for all U.S.X. drivers, including those dedicated to the Dollar General account, and that Dollar General had no

control over U.S.X. drivers. Additionally, Riner stated that U.S.X. drivers followed U.S.X. safety rules, as opposed to Dollar General safety rules. Finally, she stated that U.S.X. drivers reported any complaints or injuries to U.S.X.

{¶ 8} In Robert's affidavit, he stated that he had applied for employment through U.S.X., was hired by U.S.X., was paid through U.S.X., and received all training and orientation through U.S.X. He stated that the truck he drove was owned by U.S.X. and that U.S.X. provided him with a Qualcomm system, which provided him with all routing directions to his delivery destinations. Additionally, he stated that he received all dispatch instructions from U.S.X. and that he reported any mechanical problems or personal injuries to U.S.X. Finally, the affidavits of Bailey and Longmuir, both U.S.X. employees dedicated to the Dollar General account, stated that Dollar General did not have the right to control the manner or means of their employment with U.S.X.

{¶ 9} Subsequently, Dollar General filed a motion to strike the affidavits of Robert, Riner, Reed, Bailey, and Longmuir. Finally, the depositions regarding the issue of negligence were filed with the trial court.

{¶ 10} In March 2005, the trial court granted Dollar General's motion for summary judgment. Specifically, the trial court found that Dollar General controlled the manner and means by which Robert performed his work. Thus, the trial court found that Robert was an employee of Dollar General and that as an employer, Dollar General was immune from a claim of negligence. It is from this judgment that appellants appeal, presenting the following assignments of error for our review.

## Assignment of Error No. I

The trial court erred in granting defendants' motion for summary judgment on the basis that Robert Below was an employee of Dollar General, entitled to immunity under Ohio's workers' compensation statute.

## Assignment of Error No. II

The trial court erred in denying plaintiffs' cross-motion for summary judgment.

## Assignment of Error No. III

The trial court erred in not ruling on and finding that a question of fact existed as to whether defendant's intentionally injured Robert Below.

*Assignment of Error No. I*

{¶ 11} In the first assignment of error, appellants contend that the trial court erred in granting Dollar General's motion for summary judgment. Specifically, appellants assert that the trial court erred in finding as a matter of law that Robert was an employee of Dollar General for the purposes of R.C. 4123.741 immunity. We agree.

*Standard of Review*

{¶ 12} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175, 722 N.E.2d 108. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court used different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distr. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, 774 N.E.2d 775, at ¶ 25, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222, 631 N.E.2d 150. Summary judgment is appropriate when, looking at the evidence as a whole, the court concludes (1) that there is no genuine issue as to any material fact, (2) that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, and therefore (3) that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–59, 604 N.E.2d 138.

{¶ 13} The party moving for the summary judgment has the initial burden of producing some evidence that affirmatively demonstrates the lack of a genuine issue of material fact. *State ex rel. Burnes v. Athens Cty. Clerk of Courts* (1998), 83 Ohio St.3d 523, 524, 700 N.E.2d 1260; see, also, *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The nonmoving party must then rebut with specific facts, showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. Id.

*Workers' Compensation Employer Immunity*

{¶ 14} R.C. 4123.741 provides:

No employee of any employer, as defined in division (B) of section 4123.01 of the Revised Code, shall be liable to respond in damages at common law or by statute for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment, or for any death resulting from such injury or occupational disease, on the condition that such injury, occupational disease, or

death is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code.

{¶ 15} Here, it is undisputed that Robert was an employee of U.S.X. However, for the purposes of workers' compensation immunity, an employee may have dual employment status. Thus, the issue is whether Robert was an employee of Dollar General at the time of the accident for the purposes of workers' compensation immunity. The question whether a person is an employee for the purposes of workers' compensation immunity turns upon the key factual determination of who had the right to control the manner or means of the person's work. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph one of syllabus.

{¶ 16} In *Daniels v. MacGregor* (1965), 2 Ohio St.2d 89, 31 O.O.2d 141, 206 N.E.2d 554, the Ohio Supreme Court addressed a similar issue. In *Daniels,* the plaintiff was employed by Manpower, Inc., which provided temporary help to companies. Id. at 89, 31 O.O.2d 141, 206 N.E.2d 554. At the request of a customer, Manpower would send an employee to the premises of the customer to perform skilled or unskilled tasks at the direction of the customer. Manpower retained the right to hire and discharge employees and to determine the assignment of its employees to customers. Finally, Manpower reserved the right to remove and reassign employees from one customer to another during the course of the work day. Id. at 90, 31 O.O.2d 141, 206 N.E.2d 554.

{¶ 17} Manpower's customers paid a fixed hourly rate for the services of Manpower's employees. The customers made no payments directly to the employees, and Manpower paid all wages, taxes, and workers' compensation premiums for its employees.

{¶ 18} While working for MacGregor, a customer of Manpower, the plaintiff was injured. The evidence showed that at the time of the accident, all aspects of the work performed by the plaintiff were controlled by MacGregor rather than Manpower. As a result of the accident, the plaintiff filed a workers' compensation claim through Manpower for his injuries. Subsequently, the plaintiff sued MacGregor for negligence. Id. at 90–91, 31 O.O.2d 141, 206 N.E.2d 554.

{¶ 19} Thus, the issue before the Supreme Court of Ohio was whether MacGregor was the plaintiff's "employer" for purposes of the immunity provisions of the R.C. 4123. Specifically, the court held:

> Where, as in the instant case, an employer employs an employee with the understanding that the employee is to be paid only by the employer and at a certain hourly rate to work for a customer of the employer and where it is understood that that customer is to have the right to control the manner or means of performing the work, such employee in doing that work is an

employee of the customer within the meaning of the Workmen's Compensation Act; and where such customer has complied with the provisions of the Workmen's Compensation Act, he will not be liable to respond in damages for any injury received by such employee in the course of or arising out of that work for such customer.

2 Ohio St.2d at 91, 31 O.O.2d 141, 206 N.E.2d 554.

{¶ 20} Additionally, in *State ex rel. Stanadyne, Inc. v. Indus. Comm. of Ohio* (1984), 12 Ohio St.3d 199, 12 OBR 264, 466 N.E.2d 171, the Ohio Supreme Court addressed this issue in the context of the trucking industry. Stanadyne had entered into an agreement with Shippers Interstate Services, Inc., which required Shippers to provide qualified drivers to Stanadyne, pay the drivers, carry workers' compensation insurance, and be responsible for labor relations. In return, Stanadyne was to pay Shippers for the drivers' services and was at liberty to direct the drivers to various destinations and to select their routes. Id. at 200, 12 OBR 264, 466 N.E.2d 171. Shippers hired a man who was immediately assigned to Stanadyne and began driving for it. Six days after commencing work, the man was fatally injured while on his third assignment.

{¶ 21} The administrator of the man's estate filed a claim with the Industrial Commission of Ohio for death benefits, since the fatal accident occurred while the man was in the course and scope of his employment with Stanadyne. Ultimately, Stanadyne brought an action in mandamus in the appellate court arguing, among other things, that the man had been employed by Shippers, not Stanadyne. On appeal, the Ohio Supreme Court found that Stanadyne's argument was an attempt to place form over substance. 12 Ohio St.3d at 202, 12 OBR 264, 466 N.E.2d 171.

{¶ 22} Specifically, the court found:

An examination of the record demonstrates that although the aforementioned responsibilities did indeed rest with Shippers Interstate, the right to control the manner or means of performing the work rested with Stanadyne. The drivers' routes, destinations, the type of truck driven and the goods to be transported were all controlled by Stanadyne. Moreover, Shippers Interstate can best be described as an employment agency which supplied qualified drivers to Stanadyne.

Id. Additionally, the court stated that the court's position in similar cases, as to whether one will be considered an employer for the purposes of workers' compensation, depends on who had the right to manage the manner or means of day-to-day control over the employee. Id., citing *Campbell v. Cent. Terminal Warehouse* (1978), 56 Ohio St.2d 173, 10 O.O.3d 342, 383 N.E.2d 135.

{¶ 23} Both *Daniels* and *Stanadyne* dealt with a temporary employment situation or what could be classified as a temporary employment situation. Here, however, U.S.X. was not providing a temporary employment service to Dollar General. Rather, from the transportation-and-delivery agreement, it appears that U.S.X. was providing a delivery service. While the transportation-and-delivery agreement shows that the relationship between U.S.X. and Dollar General was distinguishable from the employment situations discussed in *Daniels* and *Stanadyne*, we must determine whether the substance of the relationship between U.S.X. and Dollar General differed from the form provided under the written contract. See *Ogier v. Stewart Bros., Inc.* (Aug. 5 1997), 10th Dist. Nos. 96APE12–1732 & 96APE12–1733, 1997 WL 447652. In other words, while the contract provides that U.S.X. was merely providing a hauling or delivery service to Dollar General, we must consider who had the right to control the manner or means of Robert's day-to-day employment to determine the substance of this relationship.

{¶ 24} To determine the factual issue of who had the right to control the manner or means of doing the work, the Ohio Supreme Court has enumerated several factors that must be considered. *Bostic*, 37 Ohio St.3d 144, 524 N.E.2d 881, at paragraph one of syllabus. These factors include, but are not limited to, who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools, and personnel used; who selects the routes; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts. Id. at 146, 524 N.E.2d 881.

{¶ 25} In the case sub judice, Dollar General argued in its motion for summary judgment that it controlled every aspect of Robert's performance, based on "U.S. Xpress Dollar General Account Policies & Procedures." However, in response to Dollar General's motion for summary judgment, appellants filed their motions in opposition and several affidavits. As noted above, based on the filed affidavits as well as the U.S.X./Dollar General transportation-and-delivery agreement, appellants argued that Dollar General did not, in fact, control the manner or means of Robert's employment.

{¶ 26} Upon review of the materials filed by both parties, we find that appellants have raised a genuine issue of fact as to whether Dollar General had the right to control the manner or means of Robert's day-to-day employment. We cannot find that U.S.X. and Dollar General had the type of relationship whereby U.S.X. was providing a quasi-temporary employment service, as in the *Daniels* or *Stanadyne* cases, which would establish that Dollar General was Robert's employer for the purposes of workers' compensation immunity as a matter of law. Rather, appellants provided specific evidence that U.S.X. provided its drivers with the trucks, maintained control of scheduling, maintained

control of dispatching and contact with its driver, provided its drivers with route information, provided payment to its drivers, and paid for all workers' compensation and unemployment payments. Additionally, the transportation delivery agreement states that U.S.X. maintains exclusive control over its employees. Thus, we are satisfied that appellants, as the nonmoving party, have raised specific facts showing that there is a genuine issue of material fact. See *Mack v. Continental Express Div. ANR Freight* (Dec. 22, 1994), 3d Dist. No. 13–94–23, 1994 WL 725912. In other words, upon review of the record below, we find that there exists a genuine issue of material fact as to who had the right to control the manner or means of Robert's day-to-day employment, which must be litigated.

{¶ 27} Thus, having found that appellants have raised a genuine issue of material fact, we find that the trial court erred in granting summary judgment on the grounds that Dollar General was Robert's employer as a matter of law. Accordingly, the first assignment of error is sustained.

### Assignment of Error No. II

{¶ 28} In the second assignment of error, appellants assert that the trial court erred in denying their cross-motion for summary judgment. Specifically, appellants contend that they should be granted summary judgment because Robert was not an employee of Dollar General as a matter of law. Having found in the first assignment of error that a genuine issue of material fact remains as to whether Dollar General can be considered Robert's employer for the purposes of workers' compensation immunity, we cannot find as a matter of law that Robert was not an employee of Dollar General. Accordingly, appellants' second assignment of error is overruled.

### Assignment of Error No. III

{¶ 29} In the third assignment of error, appellants assert that the trial court erred in failing to rule in its motion for summary judgment on their claim for a workplace intentional tort.

{¶ 30} Upon review of appellants' complaint, we cannot find that appellants pleaded a workplace intentional tort. See *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108. Rather, we find that in their complaint, appellants prayed for punitive damages, which the trial court did address in its decision granting summary judgment. See *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174. However, having found that a genuine issue of material fact exists as to the issue of Robert's employment, we find that the issue of punitive damages is not ripe for our review. Accordingly, the final assignment of error is moot.

{¶ 31} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

CUPP, P.J., and BRYANT, J., concur.