OPINION
{¶ 1} Plaintiff-appellant, Paul Curtis, administrator of the estate of Lisa Bowman, deceased, appeals the decision of the Fayette County Court of Common Pleas granting summary judgment to defendant-appellee, Pennant Moldings, Inc. ("Pennant").
 {¶ 2} On October 21, 2003, at about 11:35 p.m., Dustin Gulley was driving on U.S. 22 when he went left of center and collided, head on, with a vehicle driven by Lisa Bowman, killing her.[1] A blood test performed on Gulley at 1:45 a.m. the next morning revealed that Gulley had a blood alcohol content of .192. Gulley does not remember (1) any of the events leading up to the collision, (2) drinking alcohol the day of the accident, or (3) the accident, and only remembers waking up in the hospital two days after the accident. The events leading up to the accident are as follows:
 {¶ 3} In October 2003, Gulley was working as a temporary employee at Pennant. On October 21, 2003, Gulley was assigned to work in the powder coating department from 11 p.m. to 7 a.m. Dolores Michael ("Dea") was the powder coater lead person and Gulley's supervisor that evening. Dea, in turn, reported to Faith Knisley, the floor supervisor. Faith was working that evening, as well as Michael Rausch, a floor supervisor in training.
 {¶ 4} A little after 11 p.m., Gulley went to Dea and told her he was sick and really needed to go home. According to Dea, Gulley was pale and looked sick. As they were walking side by side to the front of the building, they encountered Faith. Dea told Faith that Gulley was sick and needed to go home. Faith offered to call someone to come get him but Gulley declined the offer. He also declined her offers to take him home or to lay down on a cot. At that point, Michael approached the group. After he was told that Gulley was sick and wanted to go home, Michael offered to take him home but Gulley declined the offer. Faith and Michael subsequently went back to work. Dea then walked Gulley to the time clock where he clocked out at 11:23 p.m. Gulley then left the building alone and walked to the parking lot. Ten minutes later, Gulley collided with Lisa Bowman.
 {¶ 5} Dea testified that she observed Gulley clock out and leave the building. She did not see him get in his car because she went back to work. During her interaction with Gulley, she did not see him stumble or slur his speech, and did not smell alcohol on his person. Dea had no reason to believe Gulley was impaired and simply believed he was sick and needed to go home. Likewise, during the three to five minutes he interacted with Gulley, Michael did not smell alcohol on his person. Gulley did not have glassy eyes and was not slouching over. Michael had no reason to believe Gulley was impaired and simply thought he was ill.
 {¶ 6} By contrast, Faith did smell alcohol on Gulley's person. However, she testified she was not close enough to Gulley to determine whether the smell was coming from his clothes or his breath. While she did not call the plant manager until after Gulley left the building, she did ask Michael, before Gulley left, whether he smelled alcohol on Gulley's person. Michael replied "no." Gulley was not staggering, did not have slurred speech, and did not appear drunk. As a result, Faith did not believe Gulley was impaired or that he would be a danger to himself or others.
 {¶ 7} Appellant filed a wrongful death suit against Gulley and Pennant, alleging that Pennant was liable under the theories of respondeat superior and independent negligence. Pennant moved for summary judgment which the trial court granted on February 16, 2006. The trial court found that (1) Gulley's employment with Pennant was a "fixed situs;" (2) prior to his arrival at Pennant on October 21, 2003, Gulley consumed alcohol in an unknown quantity, rendering him at the time he commenced his shift "under the influence;" (3) Gulley did not consume alcohol on Pennant's premises; (4) after telling his supervisor he was ill and needed to leave work, Gulley clocked out, left the building of his own volition, and left Pennant in his own car; and (5) during the time period from Gulley's initial complaint of illness to his leaving the building, he was in the company of at least three Pennant supervisors who either knew or should have known he was impaired due to alcohol consumption.
 {¶ 8} The trial court then held: "This Court has construed the evidence in a light most favorable to [appellant], finding that Pennant had actual or constructive knowledge that Gulley was leaving work in an intoxicated state and would travel home in his personal automobile on public highways. Even assuming this most egregious and lethal scenario, Ohio law clearly and unequivocally provides long standing precedent that no duty exists which would have required Pennant to prevent Gulley from leaving Pennant's premise to return home. The cases cited also establish no such duty under the doctrine of respondeat superior. The duty of due care was placed solely on Gulley, the fixed situs employee who was traveling home from work and not in the course of or scope of his employment." This appeal follows.
 {¶ 9} In a single assignment of error, appellant argues that the trial court erred by granting summary judgment to Pennant. Specifically, appellant first argues that the trial court erred by finding that Pennant was not liable under the theory of respondeat superior. Appellant asserts that Gulley was in the course and scope of his employment at the time of the accident.
 {¶ 10} An appellate court's review of a summary judgment decision is de novo. Below v. Dollar Gen. Corp.,163 Ohio App.3d 694, 2005-Ohio-4752, ¶ 12. Under Civ.R. 56(C), summary judgment is properly granted if (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Id. The inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion. Hannah v. Dayton Power LightCo., 82 Ohio St.3d 482, 485, 1998-Ohio-408.
 {¶ 11} Under the doctrine of respondeat superior, an employer is liable for an employee's negligence where work is performed for the master and the servant is subject to the control of the master in performing the work. Boch v. New York Life Ins. Co.
(1964), 175 Ohio St. 458, 461. For the employer to be liable, the employee's acts must be committed within the scope of the employment. State Farm Mut. Auto. Ins. Co. v. King, Warren App. Nos. CA2005-04-045 and CA2005-04-049, 2006-Ohio-336, ¶ 38. In a summary judgment proceeding, whether an employee is within the scope of his employment is generally a question of fact to be decided by the jury. Osborne v. Lyles (1992),63 Ohio St.3d 326, 334. It becomes a question of law, however, when the facts are undisputed and reasonable minds can come to but one conclusion. Id. at 330.
 {¶ 12} Under the "going and coming rule," an employee who has a fixed place of employment (a "fixed situs" employee), is as a matter of law not in the course of his employment within the meaning of the workers' compensation laws when traveling to or from his place of employment. Boch at 462. An employee who has a fixed situs of employment reports to the same place each day to carry out his duties. Silvers v. Elco Steel Co. (Dec. 15, 1997), Fayette App. No. CA97-06-016, at 6. Although originally discussed in the context of workers' compensation laws, the "going and coming rule" has been applied in the context of respondeat superior. See Patidar v. Tri-State Renovations,Inc., Franklin App. No. 06AP-212, 2006-Ohio-4631.
 {¶ 13} Appellant does not challenge the trial court's finding that Gulley was a fixed situs employee and the record supports such finding. The record shows that at the time of the accident, Gulley was no longer on work time as he had clocked out, was driving his own vehicle, was traveling home, and was off Pennant's premises. There is no evidence that traveling was part of his employment, either by virtue of the nature of the occupation or by virtue of the contract of employment. Construing the evidence most strongly in favor of appellant, no reasonable minds could conclude that Gulley, an employee assigned to the powder coating department, was performing work for Pennant, or that he was subject to Pennant's control, while driving home. Nor could reasonable minds conclude that Gulley was within the course and scope of his employment when he collided with Lisa Bowman while driving home from work in his own car after he had clocked out from his shift. See Boch. The trial court, therefore, did not err by finding that Pennant was not liable under the theory of respondeat superior and by granting summary judgment to Pennant on that basis.
 {¶ 14} Appellant also argues that the trial court erred by finding that Pennant was not liable under the theory of independent negligence. Appellant asserts that an employer has a duty to prevent its impaired employees from driving home from work, and thus from causing injuries to third persons. Appellant contends that Pennant's act of walking Gulley to the time clock and ushering him out and Pennant's adoption of inadequate policies constituted affirmative acts that imposed a duty on Pennant to exercise due care. The record shows that Pennant adopted an employee policy manual in 1997. The manual includes a drug and alcohol rule ("work rule") which prohibits employees from, inter alia, reporting to work or working under the influence. The work rule provides that any violation of the rule or an employee's failure to report the violation to management shall result in disciplinary action. It also provides that Pennant "looks to all employees to support this [rule] to better the overall safety, health, productivity and welfare of its employees."
 {¶ 15} "To establish a cause of action in negligence, appellant must show a duty, a breach of that duty, and damage or injury as a proximate result of the breach. The existence of a duty in a negligence action is a question of law for the court and there is no express formula for determining whether or not a duty exists." Malone v. Miami Univ. (1993), 89 Ohio App.3d 527,529-530.
 {¶ 16} In Howard v. Delco Div. of Gen. Motors Corp., Inc.
(1987), 41 Ohio App.3d 145, the issue was whether an employer has a duty to an obviously intoxicated employee not to send him home from work when the employer did nothing to encourage its employee to become intoxicated. In that case, the employee was intoxicated when he left work before the end of his shift. While driving from work, the employee struck a guard rail with his car and perished from his injuries days later. The trial court granted summary judgment to the employer. The Second Appellate District upheld the decision. The appellate court found that an employer has no duty to protect its obviously intoxicated employee from the risk that the employee will have an automobile accident after leaving work when the employee brought that risk upon himself through his own conduct with no help or encouragement from his employer.[2] Id. at syllabus.
 {¶ 17} In so finding, the appellate court noted that Ohio courts have declined to impose a duty upon social hosts to protect against the likelihood that a guest may become intoxicated and, as a result, while driving home, injure a member of the general public: "If social hosts have no duty to protect members of the general public from the likelihood of collision with automobiles being driven by their intoxicated guests on the way home, we do not think that employers have a duty to protect an employee who has become intoxicated, without encouragement or assistance from his employer, against the likelihood that he will have an automobile collision on the way home from work." Id. at 148.
 {¶ 18} In Malone, 89 Ohio App.3d 527, unbeknownst to his employer, the employee drank alcohol while at work. The employer did not realize the employee was intoxicated until after the latter clocked out for the day and he was preparing to leave the premises in his own car. The employee, who was visibly intoxicated, refused an offer to be driven home. He was involved in a head-on collision 15 minutes after leaving work. The trial court found that the employer was not legally responsible simply because its employee, with the knowledge of his supervisor, drives home from work intoxicated and, as a result, causes an accident. Relying on the Second Appellate District's decision inHoward, the Tenth Appellate District upheld the trial court's decision:
 {¶ 19} "[The supervisor] had no legal duty or obligation to prevent [the employee] from leaving his workplace. [W]hen [the employee] refused his offer of assistance, [the supervisor] could not make [the employee] stay at work until he was sober. * * * Thus, [the employer] did not contribute or create the situation which allowed [the employee] to become intoxicated. [The employer] had no duty or right to control [the employee's] activities away from work and certainly did not owe a legal duty to the public at large to protect them from injuries caused by an employee who had become intoxicated because of his own actions. * * * [The employer and the supervisor] exercised due care in this situation and, since [the employee] was no longer on work time, they had no control over him." Id. at 531.
 {¶ 20} In Fletcher Trucking v. Columbus Fair Auto Auction,Inc. (June 13, 1995), Franklin App. Nos. 94APE09-1394 and 94APE10-1503, 1995 WL 360323, the employee, who had been acting erratically during his shift, was found with a beer between his legs. His supervisor suspended him and ordered him to wait in a car until they could make arrangements to get him home. While the supervisor was reporting the incident to his superior, the employee managed to find another car which had keys in the ignition, left the employer's premises in the car, and collided head on with a truck on a public road. The employer moved for summary judgment on the ground it owed no duty to the truck driver and to members of the general driving public. The truck driver, in turn, asserted that the employer owed a duty to him because it had assumed control over the intoxicated employee.
 {¶ 21} The truck driver cited Otis Eng. Corp. v. Clark
(Tex. 1983), 668 S.W.2d 307, a decision of the Texas Supreme Court. In that case, the employer suspended an extremely intoxicated employee during his shift and told him to go home. A supervisor walked the employee to his car and asked him if he could drive. A short time later, the employee killed two women in a car accident. The Texas Supreme Court held that the employer acted affirmatively when it suspended the employee and ordered him to go home, the employer had a duty to act reasonably in light of the employee's obvious intoxication, and the employer's duty extended to innocent motorists.
 {¶ 22} Relying on Otis, the Tenth Appellate District inFletcher reversed the summary judgment granted in favor of the employer and distinguished its decision in Malone as follows: "This case is distinguishable from Malone * * * because Columbus Fair Auto realized that [its employee] was intoxicated during his shift and asserted control over him. The supervisor [in Malone] did not realize that his employee was intoxicated until the employee's shift was over and he was preparing to leave the premises in his car. The supervisor asked if the employee was all right, but never exercised control over the employee. In this case, Columbus Fair Auto exercised its right to control its employee and suspended him in the middle of his shift. In so doing, Columbus Fair Auto acted affirmatively and had a duty to act reasonably to prevent [its employee] from causing an unreasonable risk of harm to innocent third parties." Fletcher,
Franklin App. Nos. 94APE09-1394 and 94APE10-1503, 1995 WL 360323, at *5. The appellate court "express[ed] no opinion, however, as to whether an employer has a duty to prevent an employee from leaving in his own car when he is suspended during the middle of a shift." Id.
 {¶ 23} We find that the facts of this case do not present affirmative acts sufficient to impose a duty on Pennant regarding Gulley, and therefore, Pennant had no duty to prevent Gulley from leaving its premises. Clearly, Pennant did not contribute to, condone, or encourage Gulley's intoxication. Contrary to appellant's assertion, Pennant's supervisors neither required nor encouraged him to drive home. To the contrary, Gulley was offered a ride home, to lay on a cot, or to have someone pick him up. Gulley declined all offers. In effect, Pennant did nothing more than simply acquiesce in Gulley's determination to drive himself home. That is simply not enough to impose a duty on Pennant. Nor is the fact that Dea walked Gulley up to the time clock and observed him leave the building. Unlike Fletcher where the employer exercised its right to control its employees and acted affirmatively by suspending the intoxicated employee in the middle of his shift and ordering him to wait in a car for a ride home, Pennant did not assert control over Gulley. Pennant did not suspend Gulley, did not require him to go home, and did not order him to do anything. Rather, it simply allowed him to go home after he complained he was sick. Further, notwithstanding appellant's arguments to the contrary, once Gulley clocked out, he was no longer on work time, and Pennant had no control over him. See Malone.
 {¶ 24} We also reject appellant's argument that Pennant assumed a duty by adopting the work rule regarding impaired employees at work. Pennant did not undertake to render services to the public at large when it adopted a work rule prohibiting employees from coming to work impaired. Nor did Pennant enact the work rule to protect the public at large from its employees' actions. As noted in Malone, a social host has no duty to the members of the public at large to protect them from injuries caused by an intoxicated guest. Yet, appellant is asking this court to elevate an internal work rule of Pennant to a position equal to or above a state statute and to extend case law beyond its current interpretations. We decline to do so. See Barrow v.Lally (Jan. 15, 1987), Cuyahoga App. Nos. 51503 and 51524 (holding that where an employer enacted rules to prevent the consumption of alcohol in the workplace to avert illness and accidents which might give rise to liability under workers' compensation laws, any benefit to those outside the workplace was purely incidental, such that when the employer failed to enforce the rules so as to prevent an impaired employee from leaving the workplace and causing an automobile accident, the injured victim of the collision had no cause of action against the employer).
 {¶ 25} We therefore find that the trial court did not err by finding that Pennant was not liable under the theory of independent negligence and by granting summary judgment to Pennant on that basis. See Malone. The assignment of error is overruled.
 {¶ 26} Judgment affirmed.
Powell, P.J. and Bressler, J., concur.
[1] Gulley pled no contest to aggravated vehicular homicide and was sentenced to three years in prison.
[2] The appellate court intentionally did not reach the issue of whether an employer owes a duty to the public at large not to send its employees home in a state of intoxication. Howard,41 Ohio App.3d at 148.