OPINION
{¶ 1} Plaintiff-appellant, Tonda Rogan, executrix of the estate of Gregory Robinson ("Robinson"), deceased, appeals a judgment entered in favor of defendants-appellees, Scott Brown ("Brown") and W.A. Hodson, Inc. ("Hodson, Inc."), following a jury trial in the Clinton County Court of Common Pleas.
 {¶ 2} On October 6, 2003, Robinson, an employee and supervisor for the Melvin Asphalt Paving Company ("Melvin Asphalt"), and Brown, a nine-year employee of Hodson, Inc., were engaged in "berm work"[1] on Fisher Road in Clinton County, Ohio. Brown was operating a dump truck owned by Hodson, Inc. Attached to the rear of the truck was a hopper-type device called a "chip spreader" which distributes limestone on the berm. Brown was operating the truck in reverse and allowing the limestone to fall onto the roadway at the direction of Robinson. Robinson was killed when he was run over by the truck and pinned under the chip spreader.
 {¶ 3} Appellant filed a wrongful death suit against Brown and Hodson, Inc. In their answer, the latter admitted that on the day of the accident, the truck was driven and operated by Brown, "a Hodson employee," and that "at all time relevant hereto, Brown was an employee of Hodson." They asserted, however, that the complaint was barred generally under R.C. Chapter 4123 which governs workers' compensation, and specifically under the fellow employee immunity doctrine set forth in R.C. 4123.741.[2]
Brown and Hodson, Inc. subsequently moved for summary judgment on the ground that because Brown was a loaned servant to Melvin Asphalt and a fellow employee of Robinson on the day of the accident, Brown and Hodson, Inc. were both immune from liability under R.C. Chapter 4123. Appellant moved for summary judgment on the grounds that on the day of the accident (1) the loaned servant doctrine did not apply; (2) rather, the definition under R.C. 4123.01(A)(1)(c) of an employee working pursuant to a construction contract was the only applicable definition; (3) Brown failed to meet at least ten of the 20 factors set forth in R.C. 4123.01(A)(1)(c); (4) as a result, Brown was not an employee of Melvin Asphalt but rather an employee of Hodson, Inc.; and (5) neither Brown nor Hodson, Inc. were immune from liability under R.C. Chapter 4123.
 {¶ 4} On August 29, 2005, the trial court overruled both motions. The trial court denied both parties' requests to find that Brown was or was not a loaned servant to Melvin Asphalt and a fellow employee of Robinson for purposes of the fellow employee immunity. The trial court found that the factors listed in R.C.4123.01(A)(1)(c) were not determinative as to Brown's employment status on the day of the accident. Rather, "as [appellant] stated [in her] motion for summary judgment, the new definition of `employee' in construction contract work in R.C. 4123.01(A)(1)(c) was created to remedy the so-called `independent contractor violation' whereby contractors would underbid projects by labeling their employees independent contractors thereby eliminating payroll expenses." Appellant filed a motion to reconsider which the trial court denied on September 12, 2005 as follows:
 {¶ 5} "The Court agrees with [appellant] that [R.C.4123.01(A)(1)(c)] might be applicable if Mr. Brown was an independent contractor. But this is not a case where the finder of fact is called upon to determine whether Mr. Brown was an independent contractor or an employee under that statute. The record appears undisputed that Scott Brown was a general servant and employee of W.A. Hodson, Inc. when he initially reported to work on the morning of the accident, October 6, 2003.
 {¶ 6} "The factual issue to be decided is whether Scott Brown became a loaned servant for Melvin Asphalt on the date of the accident and, if so, became legally entitled to immunity under the fellow servant immunity rule pursuant to R.C. 4123.741. The Court re-affirms its decision not to charge the jury with establishing whether or not Scott Brown was a loaned servant by use of the twenty factors delineated in [R.C.] 4123.01(A)(1)(c)."
 {¶ 7} The case proceeded to a jury trial. On September 16, 2005, the jury found that Brown was a loaned servant to Melvin Asphalt on the day of the accident, and returned a verdict in favor of Brown and Hodson, Inc. Appellant now appeals the trial court's August 29 and September 12, 2005 judgment entries, raising two assignments of error.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURT ERRED BY DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' AFFIRMATIVE DEFENSE OF WORKERS COMPENSATION IMMUNITY."
 {¶ 10} Appellant argues that the trial court erred when it refused to apply R.C. 4123.01(A)(1)(c) and instead applied the loaned servant doctrine to determine whether Brown was an employee of Melvin Asphalt on the day of the accident. Appellant contends that since Brown and Hodson, Inc. asserted immunity under the fellow employee immunity doctrine and R.C. Chapter 4123, and since Robinson and Brown were working pursuant to a construction contract on the day of the accident, the trial court was required to apply the definition of an employee in R.C.4123.01(A)(1)(c) and could not apply the loaned servant doctrine.[3] Appellant cites Slauter v. Klink (Aug. 18, 2000), Montgomery App. No. 18150, 2000 WL 1162041, in support of her argument. Appellant further contends that because Brown does not meet at least ten of the 20 factors listed in R.C.4123.01(A)(1)(c), he was not an employee of Melvin Asphalt but was an employee of Hodson, Inc. on the day of the accident. As a result, neither Brown nor Hodson, Inc. were immune from liability under R.C. Chapter 4123, and appellant is entitled to summary judgment in her favor. Appellant does not argue that even assuming the trial court correctly applied the loaned servant doctrine, the court nevertheless erred by denying her motion for summary judgment (though appellant summarily contends that Brown was simply taking directions from a customer of Hodson, Inc. based on Hodson, Inc.'s instruction.)
 {¶ 11} An appellate court's review of a summary judgment decision is de novo. Below v. Dollar Gen. Corp.,163 Ohio App.3d 694, 2005-Ohio-4752, ¶ 12. Under Civ.R. 56(C), summary judgment is properly granted if (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Id.
 {¶ 12} In Slauter, William Slauter was injured by a truck driven by Kristine Klink. At the time of the accident, both Slauter and Klink worked for the same company. Slauter filed suit against Klink. The trial court granted summary judgment in favor of Klink. The trial court found that Klink was immune from liability under R.C. 4123.741 and in doing so used the definition of an employee set forth in R.C. 4123.01(A)(1)(c). Slauter appealed the trial court's decision on the ground that the trial court erred by using R.C. 4123.01(A)(1)(c) and that it should instead have used the common law "right to control" test.Slauter, Montgomery App. No. 18150, 2000 WL 1162041, at *1.
 {¶ 13} The Second Appellate District found that the trial court properly used R.C. 4123.01(A)(1)(c) instead of the common law "right to control" test and upheld the trial court's grant of summary judgment in favor of Klink. Id. at *19. The appellate court reached its conclusion after reviewing R.C.4123.01(A)(1)(c) which added a new definition of employee under R.C. 4123.01(A)(1) effective September 17, 1996, as well as opinions from the Ohio Supreme Court decided before the enactment of R.C. 4123.01(A)(1)(c). Specifically, the appellate court stated that "based on our review of the case law, the amendment appears to be an attempt to codify the various factual matters courts have considered when deciding if an employee relationship, including the employer's `right to control,' exists. * * * Moreover, * * * we think the legislature was trying to simplify a complex area. As has been noted by more than one court, the test of an independent contractor relationship is simply stated, but is not so easy to apply to the facts of different cases." Id. at *9-10.
 {¶ 14} The appellate court then held: "In view of the preceding analysis, we find that the legislature intended to redefine `employee' and to substitute a statutory test for the traditional common law standard. We also find that the legislative mandate in R.C. 4123.01(A)(1)(c) is unambiguous. As a result, we cannot restrict, qualify, narrow, or enlarge the statute. Instead, we must apply the statute without interpretation. Given these restrictions, the only conclusion we can reach is that the trial court correctly resorted to the statutory test in R.C. 4123.01(A)(1)(c). We do stress that the statute applies this test only to construction contracts, as defined in R.C. 4123.79. Consequently, the traditional common law test would still be used to evaluate employment relationships that fit within other parts of R.C. 4123.01(A)(1)." (Citations omitted.) Id. at *12-13.
 {¶ 15} In Slauter, the appellate court reviewed the Ohio Supreme Court's decisions in Gillum v. Indus. Comm. (1943),141 Ohio St. 373; Proctor v. Ford Motor Co. (1973),36 Ohio St.2d 3; and Bostic v. Connor (1988), 37 Ohio St.3d 144, in light of the then applicable definitions of an employee for purposes of workers' compensation.
 {¶ 16} In Gillum, the issue on appeal was whether the deceased worker was the employee of a company or an independent contractor. The decedent had entered into a contract with the company to haul logs. At the time, an employee was statutorily defined as "every person in the service of any person, firm or private corporation * * * but not including any person whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer." The supreme court held that `[w]hether one is an independent contractor or in service depends upon the facts of each case. The principal test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created." Gillum, 141 Ohio St. at paragraph two of the syllabus.
 {¶ 17} In Proctor, the issue was whether full-time, salaried physicians, employed to administer and operate a medical facility by Ford Motor Company for the use of its employees, were immune from liability under the fellow employee immunity statute, R.C. 4123.741. At the time, an employee was again defined as "every person in the service of any * * * private corporation * * * but not including any person whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer. [then R.C. 4123.01(A)(2)]" The supreme court found that "[t]o qualify for statutory immunity from tort liability under R.C. 4123.741, a person must be an `employee' as defined in R.C. 4123.01(A)(2)." Proctor,
36 Ohio St.2d at paragraph one of the syllabus. The supreme court rejected the injured worker's attempt to liken the physicians to independent contractors and held that the full-time salaried physicians were employees whose work furthered the business interests of their employer. Id. at 6. Thus, they were "`employees' as defined in R.C. 4123.01" and immune from liability under R.C. 4123.741. Id.
 {¶ 18} In Bostic, a truck driver died in an accident while hauling a load for a trucking company. The decedent's son filed a claim for death benefits, contending that his father was the company's employee at the time of his death. The trial court denied both parties' motions for summary judgment. The company then claimed that since the facts were not in dispute, the trial court should have found the decedent to be an independent contractor as a matter of law. The supreme court held that the issue of whether someone is an employee or an independent contractor becomes a jury question when the claimant offers some evidence he was an employee rather than an independent contractor. Bostic, 37 Ohio St.3d at 146-147. Because there was evidence from which the jury could reasonably infer that the decedent was either an employee or an independent contractor, the supreme court held that the trial court did not abuse its discretion by submitting the issue to the jury. Id. at 147.
 {¶ 19} The issue in the foregoing cases was whether the injured or deceased worker was an independent contractor or the employee of the company who was employing him. The decisions did not involve a loaned employee issue. In September 1996, the legislature enacted R.C. 4123.01(A)(1)(c). In the case at bar, the trial court declined to apply the statutory provision when considering appellant's motion for summary judgment. The trial court found that R.C. 4123.01(A)(1)(c) only applies in situations involving an independent contractor issue. We agree.
 {¶ 20} The trial court found, and appellant stated in her motion for summary judgment, that "the new definition of `employee' in construction contract work in R.C. 4123.01(A)(1)(c) was created to remedy the so-called `independent contractor violation' whereby contractors would underbid projects by labeling their employees independent contractors thereby eliminating payroll expenses." Under the law, "every employer of an employee must pay into the State Insurance Fund the amount of premiums assessed by the Administrator of Workers' Compensation for coverage under the Workers' Compensation Law or be granted the status of a self-insuring employer. For purposes of that law, the definitions of `employer' and `employee' generally included, under prior law, any construction contractor or subcontractor and any employee of such persons." Am. Sub. H.B. 245, final analysis (Aug. 2, 1996).
 {¶ 21} However, "[c]onstruction contractors often underbid projects by deducting payroll taxes from their bids. In doing so, they treated their employees as if they were independent contractors who were responsible for paying their own taxes and workers' compensation premiums; payments which the employee rarely made." Fulton, Ohio Workers' Compensation Law (2 Ed. 1998) 146, Section 6.14. As a result, R.C. 4123.01(A)(1)(c) was enacted to remedy the "independent contracting violation," id., and now "specifically identifies as being within the definition of `employee,' every person who performs labor or provides services pursuant to a construction contract" who meets specified criteria. See Am. Sub. H.B. 245, final analysis.
 {¶ 22} In light of the foregoing, we find that R.C.4123.01(A)(1)(c) applies to a person working pursuant to a construction contract only if there is an issue as to whether the person is an independent contractor. We believe that the 20 factors set forth in the statutory provision do replace the common law "right to control" test in situations involving an independent contractor issue. That is, those factors codify the various facts courts have considered when deciding if an independent contractor relationship exits, and in so codifying, simplify a complex area.
 {¶ 23} We find that our position is supported by other decisions which have applied R.C. 4123.01(A)(1)(c). In Leaversv. Conrad, 156 Ohio App.3d 286, 2004-Ohio-850, the Industrial Commission of Ohio affirmed a finding that Mark Leavers was not an employee of a construction company when he sustained injuries as a result of a fall at a construction job. The matter was then tried to a jury. The sole issue for the jury was whether Leavers was an employee of the construction company or a self-employed subcontractor on the date of his injury. Although the issue on appeal did not involve R.C. 4123.01(A)(1)(c), the Fifth Appellate District stated that the statutory provision sets forth the criteria to determine whether a construction worker is an employee. Id. at ¶ 4.
 {¶ 24} In Archibald v. Gold Key Inc., Stark App. No. 2002CA00118, 2002-Ohio-5761, a television cable installer filed a complaint against a cable company after he sustained injuries in a fall from a ladder while installing a cable. The trial court entered summary judgment in favor of the cable company. The Fifth Appellate District held that the issue of whether the installer was an employee or an independent contractor of the cable company was for the jury to decide. In so finding, the appellate court noted that because the case did not involve a construction employment issue, R.C. 4123.01(A)(1)(c) did not apply. Id. at ¶ 19. As those two decisions clearly show, just as it was inSlauter, the issue was whether the injured person was an employee or an independent contractor, and not whether the injured person was a loaned employee. We further note that unlike in the case at bar, the injured worker in Slauter and the person who injured him both worked for the same company; the injured worker claimed that the other employee was an independent contractor; and there was no loaned servant issue.
 {¶ 25} We therefore find that the trial court did not err when it declined to apply R.C. 4123.01(A)(1)(c) when considering appellant's motion for summary judgment. We further find, after viewing the evidence most strongly in favor of Brown and Hodson, Inc., that the trial court did not err by denying appellant's motion for summary judgment and by submitting the issue of Brown's employment status on the day of the accident to the jury. Appellant's first assignment of error is overruled.
 {¶ 26} Assignment of Error No. 2:
 {¶ 27} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFA-PPELLANT BY INSTRUCTING THE JURY IMPROPERLY AS TO THE APPLICABLE DEFINITION OF EMPLOYEE."
 {¶ 28} Appellant first argues that the trial court abused its discretion when it refused to instruct the jury to apply R.C.4123.01(A)(1)(c) in determining whether Brown was an employee of Melvin Asphalt on the day of the accident, and instead instructed the jury to apply the loaned servant doctrine. In light of our holding under the first assignment of error that R.C.4123.01(A)(1)(c) is not applicable in the case at bar, we find this argument moot.
 {¶ 29} Appellant also argues that even if the trial court correctly instructed the jury on the loaned servant doctrine, it nevertheless abused its discretion when it refused to instruct the jury that Brown was acting within the course and scope of his employment with Hodson, Inc. on the day of the accident as admitted by Brown and Hodson, Inc. As noted earlier, Brown and Hodson, Inc. admitted in their answer to appellant's complaint that on the day of the accident, Brown was an employee of Hodson, Inc.
 {¶ 30} A trial court has the duty to instruct the jury as to the applicable law on all issues presented in the case that are supported by the evidence. Enderle v. Zettler, Butler App. No. CA2005-11-484, 2006-Ohio-4326, ¶ 35. It is well within the sound discretion of the trial court to determine whether a jury instruction is relevant. Id. Thus, a trial court is not required to give a proposed instruction merely because counsel submitted it. Jaworowski v. Med. Radiation Consultants (1991),71 Ohio App.3d 320.
 {¶ 31} When considering the appropriateness of a jury instruction, the reviewing court must view the instructions as a whole. Enderle, Butler App. No. CA2005-11-484, at ¶ 36. An appellate court will reverse a trial court's refusal to give a proposed jury instruction only if the trial court's refusal to give the proposed instruction was an abuse of discretion, that is, the refusal was arbitrary, unreasonable, or unconscionable; and, if so, only if that refusal was prejudicial to the complaining party. Id. at ¶ 37. Prejudice will be found only if the alleged error "cripples the entire jury charge."Jaworowski, 71 Ohio App.3d at 327-328; Ballard v. Wal-MartStores, Inc. (Jan. 11, 1999), Warren App. No. CA98005-014. The jury charge, as a whole, must be so misleading and prejudicial as to induce an erroneous verdict. Enderle at ¶ 37.
 {¶ 32} Under the loaned servant doctrine, when one party lends his employee to another for a particular employment, the employee, for anything done in that employment, is treated as the employee of the party to whom he is loaned. Dirksing v. BlueChip Architectural Products, Inc. (1994), 100 Ohio App.3d 213,224. The doctrine is based on the premise that an employee may have more than one employer while doing a specific act. SeeCarmen v. Link (1997), 119 Ohio App.3d 244. "Though the employee remains the general servant of the party who has loaned him, `since the question of liability is always predicated upon some specific act of the servant, it is not important whether he remains the servant of the general employer as to matters generally, but whether, in performing the act in question, he is acting in the business of and under the direction of the general employer or that of the temporary employer.'" Medina v. HaroldJ. Becker Co., Inc., 163 Ohio App.3d 832, 2005-Ohio-5438, ¶ 57.
 {¶ 33} In determining whether an employee became a loaned servant, the inquiry should focus on the question of control, that is, whether the general employer has retained direction and control over the employee, or whether, with respect to the particular act or acts resulting in tort liability, the control of the employee has passed to the borrowing employer with reference not only to the result reached but to the method of reaching it. Ferguson v. Dyer, 149 Ohio App.3d 380,2002-Ohio-1442, ¶ 15.
 {¶ 34} The trial court instructed the jury on the loaned servant doctrine in relevant part as follows: "An employer is liable for injuries negligently caused by its employee. You must determine the employment status of [Brown] on October 6, 2003 to resolve this dispute.
 {¶ 35} "The Plaintiff alleges that [Brown] was an employee of [Hodson, Inc.] on October 6, 2003. Defendants contend that [Brown] was a loaned employee from [Hodson, Inc.] to [Melvin Asphalt] on the date of the accident.
 {¶ 36} "An employee may be loaned to a second employer for a fixed time or job. To the extent that the second employer has the right to control what the employee shall do and how he shall do it, this employee is considered to be in the employ of the second employer. * * * Where an employee's performing duties of his employment and performing duties entrusted to him by his employer, then he's not a loaned employee. However, if the employee is not performing duties entrusted to him by his employer and is under the direction and control of another, then his employer has relinquished control and the employee is a loaned employee of someone else.
 {¶ 37} "* * *
 {¶ 38} "If at the time of the accident on October 6, 2003, you find [Brown] was a loaned employee for [Melvin Asphalt], you must find for the Defendants on all claims brought by the Plaintiff. If at the time of the accident on October 6, 2003, you find [Brown] was not a loaned employee, then you must find [Brown] was the employee of [Hodson, Inc.]. Then you must determine whether [Hodson, Inc.] is vicariously liable for the actions of [Brown]."
 {¶ 39} Upon reviewing the foregoing instructions, we find that the trial court properly instructed the jury as to the issue of Brown's employment status on the day of the accident. We first note that Brown's and Hodson, Inc.'s admission in their answer that Brown was an employee of Hodson, Inc. on the day of the accident did not resolve the issue of whether on that same day and while working with Robinson, Brown was a loaned employee to Melvin Asphalt. As the loaned servant doctrine clearly states, an employee can remain the general servant of his employer while becoming a loaned employee to a second employer.
 {¶ 40} The record also shows that the trial court engaged in extensive discussions with both parties with regard to the loaned servant jury instructions. Both parties challenged some of the trial court's language in its original jury instructions. Following both parties' closing arguments, the trial court instructed the jury. After the jury retired to deliberate, and as agreed by the parties, the trial court then allowed both parties to object to the jury instructions.[4] Appellant objected to the trial court's failure to include in its instructions the fact that Brown was an employee of Hodson, Inc. on the day of the accident as admitted in their answer. The trial court's reply to appellant's objection shows that the trial court believed both parties had agreed with its loaned servant jury instructions and that these instructions had taken care of appellant's concerns and challenges with the earlier draft. Likewise, the attorney for Brown and Hodson, Inc. believed that both parties agreed the loaned servant instructions given to the jury were fine.
 {¶ 41} We find that the jury instructions instructed the jury that if Brown was not a loaned employee to Melvin Asphalt, then he was an employee of Hodson, Inc. That is, the jury was required to conclude that Brown was an employee of Hodson, Inc. We also find that the jury instructions properly advised the jury on the loaned servant doctrine and that Brown could have more than one employer while he was engaged in berm work on the day of the accident. We cannot say that the jury instructions as given by the trial court, were so arbitrary, unreasonable, or unconscionable as to be an abuse of discretion. Nor can we say that the jury charge, as a whole, was so misleading and prejudicial as to induce an erroneous verdict. Appellant's second assignment of error is overruled.
 {¶ 42} Judgment affirmed.
Powell, P.J., and Walsh, J., concur.
[1] "Berming" is the process in which crushed limestone is placed on the side of a newly-paved road, adjacent to and parallel with the fresh asphalt surface.
[2] R.C. 4123.741 provides in relevant part that "No employee of any employer, as defined in [R.C. 4123.01(B)], shall be liable to respond in damages at common law or by statute for any injury * * * received * * * by any other employee of such employer in the course of and arising out of the latter employee's employment, or for any death resulting from such injury * * * on the condition that such injury * * * or death is found to be compensable under [R.C. 4123.01 to 4123.94]."
[3] R.C. 4123.01(A)(1)(c) defines "employee" as "every person who performs labor or provides services pursuant to a construction contract, as defined in [R.C. 4123.79], if at least ten of [20 listed] criteria apply[.]" R.C. 4123.79(C)(2), in turn, defines a "construction contract" as "any oral or written agreement involving any activity in connection with the erection, alteration, repair, replacement, renovation, installation, or demolition of any building, structure, highway, or bridge."
[4] After the jury retired to deliberate, the record shows the trial court stating: "for the record, there are some objections to the jury instructions that * * * need to be made. And we had an agreement in lieu of excusing the jury first, I will allow those objections to be preserved for the record after the jury was excused."