[Cite as *Cowan v. Interdyne Corp.*, 2013-Ohio-642.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### ALLEN COUNTY

ROSEMARY COWAN, EXECUTOR
OF THE ESTATE OF WINFRED COWAN,

    PLAINTIFF-APPELLANT,
    -and-                      CASE NO.  1-12-26

ROSEMARY COWAN,

    PLAINTIFF-APPELLANT,

    v.                           O P I N I O N

INTERDYNE CORP., ET AL.,

    DEFENDANTS-APPELLEES.

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2012 0163

Judgment Affirmed

Date of Decision:   February 25, 2013

APPEARANCES:

    *Brian J. Vennekotter* for Appellant, Rosemary Cowan

    *William E. Clark*  for Appellee, Interdyne Corp.

Case No. 1-12-26

**PRESTON, P.J.**

{¶1} Plaintiffs-appellants, Rosemary Cowan as the Executor of the Estate of Winfred Cowan, and Rosemary Cowan, filed an appeal of the Allen County Court of Common Pleas' judgment granting defendants-appellees, Interdyne Corporation and the Bureau of Workers' Compensation, summary judgment. Appellants argue the trial court erred when it granted appellees' motion for summary judgment because the record creates a genuine issue of material fact in dispute. For the reasons that follow, we affirm.

{¶2} On February 27, 2012, Winfred and Rosemary Cowan filed a complaint against Interdyne and the BWC alleging that Interdyne had negligently exposed Winfred to chemicals and materials that caused his restrictive pulmonary defect.[1] (Doc. No. 1). The Cowans sought damages in excess of $25,000 to recover for Rosemary's loss of consortium with her husband and Winfred's medical expenses. (*Id.*).

{¶3} The BWC filed its answer on April 9, 2012. (Doc. No. 6). Interdyne filed its answer on April 30, 2012. (Doc. No. 7).

---

[1] The Cowans included the BWC as a party to this action because, according to the Cowans' complaint and the BWC's answer, the BWC has paid some of Winfred's medical expenses. (Doc. No. 1); (Doc. No. 6). Consequently, the Cowans and the BWC assert that the BWC has a right of subrogation in this matter. (*Id.*); (*Id.*).

Case No. 1-12-26

{¶4} On April 30, 2012, Interdyne filed a motion for summary judgment. (Doc. No. 8). Interdyne argued that R.C. 4123.74 grants it immunity from the Cowans' claims. (*Id.*).

{¶5} On May 25, 2012, the Cowans filed their motion in response. (Doc. No. 10). The Cowans argued Patrick Staffing, a temporary placement agency, was Winfred's employer so R.C. 4123.74 did not apply to Interdyne. (*Id.*).

{¶6} On June 4, 2012, the trial court filed its judgment entry granting Interdyne summary judgment. (Doc. No. 11). The trial court found that Interdyne was Winfred's employer within the meaning of R.C. 4123.74 because it controlled his day-to-day tasks in the workplace. (*Id.*).

{¶7} On June 20, 2012, the Cowans filed a notice of appeal.[2] (Doc. No. 12). Appellants now raise one assignment of error for our review.

**Assignment of Error**

**The trial court committed a reversible error by granting summary judgment in favor of Interdyne when there is a genuine issue of material fact whether the loaned servant doctrine applied.**

{¶8} In their sole assignment of error, appellants argue Winfred was an employee of Patrick Staffing and not Interdyne. Appellants contend that Winfred was assigned to work at Interdyne through Patrick Staffing. Appellants argue that pursuant to Interdyne's contract with Patrick Staffing, Patrick Staffing retained the

---

[2] Pursuant to App.R. 29(A), this Court substituted Rosemary Cowan, Executor of the Estate of Winfred Cowan, for Winfred as a party to this action due to Winfred's recent death.

right to direct and control Winfred, so Patrick Staffing was Winfred's sole employer.

{¶9} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶10} Material facts are those facts "that might affect the outcome of the suit under the governing law." *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Whether a genuine issue exists is answered by the following inquiry: [d]oes the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" *Turner* at 340, citing *Liberty Lobby, Inc.*, at 251-252.

{¶11} Summary judgment should be granted with caution, resolving all doubts in favor of the nonmoving party. *Osborne v. Lyles*, 63 Ohio St.3d 326, 333 (1992). "The purpose of summary judgment is not to try issues of fact, but is

rather to determine whether triable issues of fact exist." *Lakota Loc. Schools Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637, 643 (6th Dist.1996).

**{¶12}** Interdyne argues that it is immune from claims for common law negligence damages pursuant to R.C. 4123.74. R.C. 4123.74 provides:

> Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter.

Interdyne contends that based on the loaned servant doctrine, it is an employer within the meaning of R.C. 4123.74 and consequently immune from appellants' claims.

**{¶13}** The Supreme Court of Ohio addressed this issue in *Daniels v. MacGregor*, 2 Ohio St.2d 89 (1965). In *Daniels*, the plaintiff was employed by Manpower, Inc., a company that provided temporary workers to individuals and

companies. *Id*. at 89. Manpower sent the plaintiff to work for MacGregor Company, one of Manpower's customers, where he was injured while installing a light fixture. *Id*. at 89-91.

{¶14} The pleadings, affidavits, a deposition, and a stipulation revealed that Manpower's employees received instructions from the customer regarding what tasks the individual should perform and how to perform those tasks. *Id*. at 89-90. Manpower retained the right to hire and discharge its employees, and the right to determine which employees were assigned to which customers. *Id*. Manpower also reserved the right to remove its employees from one customer and place them with another, even during the course of a work day. *Id*. at 90.

{¶15} Manpower's customers paid a fixed hourly rate for the work performed by Manpower's employees. *Id*. The customers did not pay Manpower's employees directly; rather, Manpower paid all of the wages, taxes, and workers' compensation premiums for its employees. *Id*.

{¶16} Thus, the issue before the Court was whether MacGregor was the plaintiff's employer for the purposes of the immunity provisions of R.C. 4123.74. The Court determined that MacGregor was the plaintiff's employer at the time of the injury, holding that where:

> an employer employs an employee with the understanding that the
> employee is to be paid only by the employer and at a certain hourly

rate to work for a customer of the employer and where it is understood that customer is to have the right to control the manner or means of performing the work, such employee in doing that work is an employee of the customer within the meaning of the Workmen's Compensation Act; and, where the customer has complied with the provisions of the Workmen's Compensation Act, he will not be liable to respond in damages for any injury received by such employee in the course of or arising out of that work for such customer.

*Id*. at 92.

{¶17} This Court has previously recognized that, "for purposes of workers' compensation immunity, an employee may have dual employment status." *Below v. Dollar General Corp.*, 3d Dist. No. 9-05-08, 2005-Ohio-4752, ¶ 15. Whether a loaned servant is a customer's employee depends on who had the right to manage the manner or means of day-to-day control over the employee, not who was responsible for administrative human resources matters. *Cottrill v. Thermo Electron North America, LLC*, 4th Dist. No. 09CA34, 2010-Ohio-2238, ¶ 24. In determining who had the right to control the manner or means of doing the work, this Court has considered several factors including, but not limited to, "who controls the details and quality of the work; who controls the hours worked; who

selects the materials, tools, and personnel used; who selects the routes; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts." *Below* at ¶ 24, citing *Bostic v. Connor*, 37 Ohio St.3d 144, 146 (1988).

{¶18} In the present case, the trial court granted summary judgment in favor of Interdyne based on the pleadings, an affidavit by William Bresson, who is an operations supervisor with Interdyne, an affidavit by Winfred, and the contract between Interdyne and Patrick Staffing. (Doc. No. 11). In his affidavit, Bresson testified that as an operations supervisor, he is familiar with Interdyne's day-to-day activities, "as well as its method and manner of supervision, direction, and control of all regular and leased employees." (Doc. No. 8). Bresson testified that Winfred was an Interdyne employee from June 1, 2004 to January 1, 2005, and was leased from Patrick Staffing from January 19, 2005 to April 16, 2010. (*Id.*). Bresson testified that Interdyne was in compliance with all Ohio Workers' Compensation requirements and that Interdyne acted according to the terms of its contract with Patrick Staffing. (*Id.*). Bresson further testified that Interdyne's "method and manner of supervision, direction, and control was the same with respect to Winifred (sic) Cowan as it was with its regular employees." (*Id.*).

{¶19} In his affidavit, Winfred testified that he has been employed with Patrick Staffing from 2004 or 2005 through 2010, and that he was assigned to

work for Interdyne during that time. (Doc. No. 10). Winfred testified that he applied for the position through Patrick Staffing, that Patrick Staffing provided him with his paycheck, took out his taxes, and notified him that he was no longer assigned to Interdyne. (*Id.*).

{¶20} The contract between Interdyne and Patrick Staffing details their respective rights and responsibilities. (Doc. No. 8). Section 7 of the contract is titled "Administration/Management" and provides that Patrick Staffing "is responsible for employment matters such as payment for all Federal, State and local employment taxes." (*Id.*). Subsection (j) states:

> Client agrees that, since it controls the work-site and scheduling and supervision of Covered Employees, and exercises the day-to-day direction and control over Covered Employees, Client will determine, verify and accurately report to [Patrick Staffing]:
>
> (i) The total number of hours worked by all Covered Employees and their exempt and non-exempt status; and
>
> (ii) The total remuneration due each Covered Employee for every payroll * * *.

(*Id.*). Section 9 of the contract is titled "Covered Employee On-Site Supervision." (*Id.*). The provision states:

Client will designate on-site Supervisors. These on-site Supervisors shall determine and be responsible for all procedures to be followed by employees regarding the time, manner and performance of their duties. If determined to be necessary, [Patrick Staffing] reserves the right of direction and control over management of safety and hazard control affecting its Employees, including: responsibility for performing inspections of client equipment and premises; the promulgation of safety policies; and the management of workers compensation claims, claims filing and related procedures.

(*Id.*).

**{¶21}** After reviewing the record, we find that the present case is similar to *Daniels*. The contract between Interdyne and Patrick Staffing specifically provides for Interdyne to exercise "day-to-day direction and control" over Winfred. (*Id.*). The contract also requires Interdyne to designate supervisors who would "be responsible for all procedures to be followed by employees regarding the time, manner and performance of their duties." (*Id.*). Thus, it was Interdyne, and not Patrick Staffing, that exercised day-to-day control over Winfred and determined how he would perform his tasks.

**{¶22}** This construction of the contract is supported by the affidavits by Bresson and Winfred. Bresson testified that Interdyne supervised Winfred like

any other employee. (*Id.*). Bresson also testified that Interdyne acted according to its contract with Patrick Staffing, which required Interdyne to have "day-to-day direction and control" over Winfred. (*Id.*). Winfred testified that Patrick Staffing performed administrative and human resources services related to his employment, such as providing him with his paycheck, deducting his taxes, and notifying him when he was no longer assigned to Interdyne. (Doc. No. 10). Notably, Winfred did not make any statements demonstrating that Patrick Staffing exercised day-to-day control over his work activities. (*Id.*).

{¶23} Appellants argue that pursuant to Interdyne's contract with Patrick Staffing, Patrick Staffing reserved:

> the right of direction and control over management of safety and hazard control affecting its Employees, including: responsibility for performing inspections of client equipment and premises; the promulgation of safety policies; and the management of workers compensation claims, claims filing and related procedures.

(Doc. No. 8). Appellants contend that since Patrick Staffing reserved the right to direct and control the management of safety and hazard issues affecting Winfred, Interdyne did not have the required day-to-day control over Winfred to be his employer pursuant to R.C. 4123.74. We find this argument unpersuasive. The contract's plain language reserves "the right of direction and control over

management of safety and hazard control," not the right to control the manner in which Winfred performs his day-to-day tasks. (*Id.*). Sections 7(j) and 9 of the contract allocate those responsibilities to Interdyne. (*Id.*). Consequently, we cannot find that Patrick Staffing was Winfred's employer to the exclusion of Interdyne as appellants contend.

**{¶24}** Appellants also argue that the present case is similar to a case from the Tenth District Court of Appeals, *Sellers v. Liebert Corp.*, 10th Dist. No. 05AP-1200, 2006-Ohio-4111. In *Sellers*, the plaintiff was employed by Tailored Management, a professional employment organization, and assigned to work at Liebert Corporation. *Id.* at ¶ 1. The plaintiff was injured while working for Liebert. *Id.* The contract between Tailored and Liebert stated, "Tailored retains all rights of supervision and control of Tailored Associates including, but not limited to, the hiring and promotion, discipline and discharge, wages and salary administration, processing of grievances, policing of employee conduct and appearance, and labor relations." *Id.* at ¶ 9. The contract further provided, "[t]he parties acknowledge and agree that all Tailored Associates shall at all times be under the supervision and control of Tailored, and shall not be under the direct control of Client." *Id.*

**{¶25}** The Tenth District determined that the contract clearly provided that Tailored retained the rights of supervision and control over its employees. *Id.* at ¶

10. The Court decided the case was distinguishable from *Daniels* because in its contract, Tailored retained these rights to day-to-day control, which had not occurred in *Daniels*. *Id*. at ¶ 16. Consequently, the Tenth District held that the trial court's grant of summary judgment in favor of Liebert was inappropriate. *Id*.

{¶26} The present case is distinguishable from *Sellers*. Here, Patrick Staffing did not retain the right to control and supervise its employees. Rather, Patrick Staffing retained "the right of direction and control over management of safety and hazard control." (Doc. No. 8). This control is much more limited than the control at issue in *Sellers*. The contract provides ways in which Patrick Staffing could exercise this right, including "responsibility for performing inspections of client equipment and premises; the promulgation of safety policies; and the management of workers compensation claims, claims filing and related procedures," none of which involve the day-to-day control over the manner in which the employees complete their tasks. (*Id*.). In comparison to this limited right that Patrick Staffing retained, the contract explicitly states that Interdyne has day-to-day control over the employees. (*Id*.). Thus, *Sellers* does not apply to the instant case because Patrick Staffing did not reserve the right to day-to-day control over the employees. Furthermore, appellants have not provided any evidence that Patrick Staffing ever invoked this contract provision while Winfred worked for Interdyne.

{¶27} In their reply brief, appellants argue that they have not had the opportunity to determine whether Patrick Staffing used this contract provision because Interdyne filed its motion for summary judgment with its answer. Appellants contend they have not had a chance to complete discovery, so it is not possible to determine whether Patrick Staffing ever acted pursuant to this provision. However, appellants failed to file a motion requesting a continuance to complete the necessary discovery prior to filing their response to Interdyne's motion for summary judgment and failed to present this argument in their response. (Doc. No. 10). "A party's failure to raise an issue in response to an adverse party's motion for summary judgment waives that issue for purposes of an appeal." *Pottorf v. Sell*, 3d Dist. No. 17-08-30, 2009-Ohio-2819, ¶ 24, citing *Minster Farmers Coop. Exch. Co. v. Meyer*, 3d Dist. No. 17-08-31, 2009-Ohio-1445, ¶ 22. Therefore, this issue is not properly before this Court.

{¶28} Even if appellants presented evidence that Patrick Staffing had invoked its "right of direction and control over management of safety and hazard control," we are not persuaded that they would prevail on this issue. (Doc. No. 8). The evidence demonstrates that Patrick Staffing paid Winfred with the understanding that Winfred would be working for Interdyne, and that Interdyne had the right to control the manner and means in which Winfred performed his

day-to-day tasks. Consequently, we conclude that Interdyne was Winfred's employer for the purposes of the immunity provisions of R.C. 4123.74.

{¶29} The appellants' assignment of error is, therefore, overruled.

{¶30} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**