[Cite as *Crew v. Advics Mfg. Ohio, Inc.*, 2020-Ohio-328.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| DONALD CREW, | : | |
| Appellant, | : | CASE NO. CA2019-05-051 |
| | : | O P I N I O N |
| - vs - | | 2/3/2020 |
| | : | |
| ADVICS MANUFACTURING OHIO, INC., et al., | : | |
| | : | |
| Appellees. | : | |


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CV090620


O'Connor Acciani & Levy L.P.A., Ronald T. Bella, 600 Vine Street, Suite 1600, Cincinnati, Ohio 45202, for appellant

Cooke Demers, LLC, David J. Demers, Adam Bennett, 260 Market Street, Suite F, New Albany, Ohio 43054, for appellee


**HENDRICKSON, P.J.**

{¶ 1} Appellant, Donald Crew, appeals the decision of the Warren County Court of Common Pleas granting summary judgment to appellee, Advics Manufacturing Ohio, Inc. ("AMO"), on his negligence claim.[1] For the reasons stated below, we affirm the decision of

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar for purposes of issuing this opinion.

the trial court.

{¶ 2}   AMO is an automotive component parts manufacturing business located in Lebanon, Ohio.  In addition to hiring its own employees, AMO contracted with Accurate Personal LLC ("Accurate") to hire temporary workers.  Pursuant to a June 2015 Fee & Terms Agreement, AMO "agree[ed] that they ha[d] sole responsibility for assigning Temporary Associates after they are presented by Accurate Personal LLC at [AMO]. [AMO] also agrees to train and supervise Temporary Associates in the conduct of their work duties."

{¶ 3}   The Fee & Terms Agreement between AMO and Accurate was updated on November 25, 2015 to more specifically define the parties' responsibilities.  The November 25, 2015 Agreement provided that Accurate was responsible for (1) recruiting, screening, and providing temporary employees for assignment at AMO's site in accordance with job requirements and job descriptions provided by AMO; (2) providing drug screening and background checks; (3) ensuring that every temporary worker completed an Employment Verification Form (I-9), which would be retained by Accurate; (4) maintaining files and records for temporary employees; and (5) withholding, paying, and reporting taxes for each temporary worker Accurate provided to AMO.

{¶ 4}   Under the November 25, 2015 Agreement, AMO was responsible for (1) providing Accurate with a job description specifying job duties and the scope of assignment for each temporary worker; (2) not requiring a worker to perform duties beyond those described in the job description and notifying Accurate if and when there was a change in the duties or responsibilities required of the worker; (3) providing written authorization of a worker's hours to Accurate; (4) complying with all applicable state and federal wage and hour laws related to employees staffed at AMO; and (5) providing a safe work environment for employees, which included providing employees with personal protective equipment and

clothing as required by law or as deemed necessary by Accurate. Under the agreement, Accurate reserved the right to inspect AMO's work site at any time to ensure a safe and healthy work environment for its employees. However, the Agreement specifically provided that AMO was "solely responsible for management relating to the day-to-day supervision of Accurate Associates. [AMO] will provide safety and job specific training to Accurate Associates assigned to [AMO's] site. * * * [AMO] will notify Accurate immediately in the event of an injury or accident at [AMO's] site."

{¶ 5} Pursuant to the November 25, 2015 Agreement, "Accurate will be responsible for providing workers compensation insurance coverage for all assigned Accurate Personnel employees. Both parties agree to immediately notify each other in case of any injury or accident or any claim for workers compensation benefits involving Accurate employees." The parties agreed that "Accurate's bill rate shall be adjusted according to federal and state laws, where applicable" and that "Accurate reserves the right to adjust bill rates to compensate for mandatory adjustments to FICA, FUTA, SUI, Workers' Compensation, and any federal or state mandated programs or benefits."

{¶ 6} On December 21, 2016, AMO advised Accurate that it needed a first shift associate who could operate a stand-up forklift. That same day, Crew walked into Accurate's office looking for a job. After filling out an application, Crew met with an Accurate employee who discussed the forklift position at AMO. Crew informed the Accurate employee that he had no experience operating a stand-up forklift, and he was advised that he would receive the necessary training by AMO. After passing a drug test, Crew was instructed to report to AMO to begin work on January 3, 2017.

{¶ 7} Crew arrived on time for his first day of work and was met by Tony Woods, a lead operator for AMO. Woods began working with Crew on the operation of the stand-up forklift. Later that day, Crew was assigned to work with another AMO employee, Pete

O'Reilly, who was responsible for showing Crew his work duties and training him on how it should be completed. All of Crew's training was completed by AMO. Accurate did not have an office at AMO and no one from Accurate was present at AMO's facility on January 3, 2017.

{¶ 8} With O'Reilly directing Crew's activities on January 3, 2017, Crew worked without incident for a brief period of time. However, after returning from a 15-minute break, Crew was injured in his operation of the forklift. While attempting to follow O'Reilly in the forklift, Crew "slipped out of the machine" and was ultimately pinned between the forklift and a concrete bollard. As a result of the accident, Crew sustained serious and traumatic injury to his left leg.

{¶ 9} On January 3, 2018, Crew filed a negligence complaint against AMO, arguing that AMO "carelessly and negligently failed to provide adequate training [to him] on how to safely operate" a stand-up forklift and "carelessly, negligently, and recklessly exposed [him] to a dangerous condition," thereby proximately causing him serious and permanent bodily injury.[2] Crew named the Ohio Bureau of Workers' Compensation ("OBWC") as a party to the lawsuit, as OBWC had a subrogation interest in the action as a result of paying certain medical expenses or benefits to him.

{¶ 10} AMO filed an answer denying the allegations set forth in Crew's complaint and asserting as an affirmative defense that Crew was an employee of AMO whose claims were preempted by the Ohio's Workers' Compensation Act, R.C. Chapters 4121 and 4123. AMO asserted that Crew had already requested and received benefits for his injuries under the Workers' Compensation Act. The parties engaged in discovery, with a number of depositions being taken.

---

2. Crew's complaint also set forth a second cause of action against AMO for intentional tort. This cause of action was later dismissed without prejudice by agreement of the parties.

{¶ 11} On November 11, 2018, AMO moved for summary judgment, arguing that at the time of the accident, Crew was a loaned servant acting in the course and scope of his employment with AMO. AMO therefore argued that Crew's exclusive remedy for redress of his injuries was under the Workers' Compensation Act. In support of its motion for summary judgment, AMO relied on deposition testimony taken from Crew, Renee Bowlin, a business development specialist at Accurate, Amanda Nichols, a senior account manager for Accurate, and Michelle Snow, a senior manager at AMO, as well as AMO's and Accurate's June 2015 Fee & Terms Agreement and November 25, 2015 Agreement, email correspondence between Accurate and AMO, and a training evaluation form completed by Woods.

{¶ 12} Crew filed a memorandum in opposition to AMO's summary judgment motion, arguing that genuine issues of material fact existed as to whether the loaned servant doctrine applied given that Accurate retained "significant rights to supervision and control over their associates." Crew further argued that summary judgment was inappropriate as AMO failed to establish it had paid premiums into the state insurance fund to provide coverage for Crew, thereby denying it the right to immunity under Ohio's Workers' Compensation Act.

{¶ 13} The trial court granted summary judgment to AMO, finding that

> [AMO] controlled and directed Mr. Crew's activities while he was on the job the day of the accident and, as a result, the Court finds that Mr. Crew was a loaned servant to [AMO]. Based on this finding that [AMO] was also Mr. Crew's employer under this doctrine, [AMO] is entitled to immunity from common law negligence actions under R.C. 4123.35 and summary judgment is appropriate.

{¶ 14} Crew timely appealed the trial court's decision and raised the following as his sole assignment of error:

{¶ 15} THE TRIAL COURT ERRED BY GRANTING [AMO'S] MOTION FOR

SUMMARY JUDGMENT.

{¶ 16} In his sole assignment of error, Crew argues that the trial court erred in granting AMO's summary judgment motion as genuine issues of material fact exist as to (1) whether AMO was his employer at the time of the injury, as contemplated by the loaned-servant doctrine, and (2) whether AMO paid into the workers' compensation fund and was entitled to immunity under R.C. 4123.35 and 4123.74 on Crew's negligence claim.

{¶ 17} An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently and without deference to the decision of the trial court. *Tankersley v. Ohio Fair Plan Underwriting Assn.*, 12th Dist. Clermont No. CA2018-01-003, 2018-Ohio-4386, ¶ 45. Summary judgment is proper when the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, show that (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 18} The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of genuine issues of material fact. *Anderson v. Jancoa Janitorial Servs.*, 12th Dist. Butler No. CA2019-01-018, 2019-Ohio-3617, ¶ 23, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Once this initial burden is met, the nonmoving party "must then rebut the moving party's evidence with specific facts showing the existence of a genuine triable issue; it may not rest on the mere allegations or denials in its pleadings." *Deutsche Bank Natl. Trust Co. v. Sexton*, 12th Dist. Butler No. CA2009-11-288, 2010-Ohio-4802, ¶ 7, citing Civ.R. 56(E). Summary judgment is proper if the nonmoving party fails to set forth such facts. *Taylor v. Atrium Med. Ctr.*, 12th Dist. Warren No. CA2018-07-074, 2019-Ohio-447, ¶ 10. "In determining whether a genuine

issue of material fact exists, the evidence must be construed in favor of the nonmoving party." *Id.*

{¶ 19} Claims arising from injuries sustained in the course of employment are typically addressed exclusively by Ohio's workers' compensation statutes. *See Brewster v. Prestige Packaging, Inc.*, 12th Dist. Butler No. CA2000-05-085, 2001 Ohio App. LEXIS 649, *5 (Feb. 12, 2001); R.C. 4123.74; Section 35, Article II of the Ohio Constitution. The workers' compensation system "operates as a balance of mutual compromise between the interests of the employer and employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability." *Blankenship v. Cincinnati Milacron Chemicals*, 69 Ohio St.2d 608, 614 (1982).

{¶ 20} R.C. 4123.35 mandates that every private employer participate in the workers' compensation system. *Hornyak v. Reserve Alloys, L.L.C.*, 8th Dist. Cuyahoga No. 104302, 2016-Ohio-8489, ¶ 17. "Most employers participate in the system by paying into a state insurance fund that administers and pays out claims." *Stolz v. J & B Steel Erectors*, 155 Ohio St.3d 567, 2018-Ohio-5088, ¶ 8, citing R.C. 4123.35(A). However, the workers' compensation system "also allows certain employers who possess 'sufficient financial and administrative ability' to self-insure their workers' compensation obligations." *Id.*, quoting R.C. 4123.35(B). Self-insuring employers "have the same immunity from liability as other employers but pay claims directly to injured employees and the dependents of deceased employees." *Id.* The immunity for employers is set forth in R.C. 4123.74, which provides that

> [e]mployers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting

from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter.

{¶ 21} In *Daniels v. MacGregor Co.*, 2 Ohio St.2d 89 (1965), syllabus, the Ohio Supreme Court recognized that

where an employer employs an employee with the understanding that the employee is to be paid only by the employer and at a certain hourly rate to work for a customer of the employer and where it is understood that the customer is to have the right to control the manner or means of performing the work, such employee in doing that work is an employee of the customer within the meaning of the Workmen's Compensation Act; and, where such customer has complied with the provisions of the Workmen's Compensation Act, he will not be liable to respond in damages for any injury received by such employee in the course of or arising out of that work for such customer.

{¶ 22} This court must, therefore, determine whether AMO presented evidence establishing that it was Crew's employer at the time of the accident and that workers' compensation premiums where paid on behalf of Crew.

**Employee Under the Loaned-Servant Doctrine**

{¶ 23} "Under the loaned servant doctrine, when one party lends his employee to another for a particular employment, the employee, for anything done in that employment, is treated as the employee of the party to whom he is loaned." *Rogan v. Brown*, 12th Dist. Clinton No. CA2005-10-025, 2006-Ohio-5508, ¶ 32. This doctrine is based on the premise that an employee may have more than one employer while doing a specific act. *Id. See also Sellers v. Liebert Corp.*, 10th Dist. Franklin No. 05AP-1200, 2006-Ohio-4111, ¶ 7 (recognizing that "for purposes of workers' compensation immunity, an employee may have more than one employer"). "Though the employee remains the general servant of the party who has loaned him, 'since the question of liability is always predicated upon some specific

act of the servant, it is not important whether he remains the servant of the general employer as to matters generally, but whether, in performing the act in question, he is acting in the business of and under the direction of the general employer or that of the temporary employer.'" *Medina v. Harold J. Becker Co.*, 163 Ohio App.3d 832, 2005-Ohio-5438, ¶ 57 (1st Dist.), quoting *Halkias v. Wilkoff Co.*, 141 Ohio St. 139, 152-153 (1943).

{¶ 24} "In determining whether an employee became a loaned servant, the inquiry should focus on the question of control." *Rogan* at ¶ 33. The focus is "whether the general employer has retained direction and control over the employee, or whether, with respect to the particular act or acts resulting in tort liability, the control of the employee has passed to the borrowing employer with reference not only to the result reached but to the method of reaching it." *Id.*, citing *Ferguson v. Dyer*, 149 Ohio App.3d 380, 2002-Ohio-1442, ¶ 15 (10th Dist.).

{¶ 25} Crew argues that the loaned-servant doctrine does not apply as Accurate, not AMO, was his employer. Relying on Accurate's contract with AMO, which gave Accurate the right to maintain control of administrative acts relating to his employment, such as the retention of all government documents relating to his employment, withholding and paying all state, local and federal taxes, determining his pay and benefits, and maintaining workers' compensation insurance for him, as well as Accurate's right to inspect AMO's facilities to ensure a safe work environment, to specify protective equipment and clothing to be worn at AMO's facilities, and to approve any changes in the previously-agreed-to job duties, Crew argues a genuine issue of material fact exists as to whether Accurate retained control over his employment. In support of his argument, Crew relies on *Sellers v. Liebert Corp.*, 2006-Ohio-4111.

{¶ 26} In *Sellers*, the plaintiff was employed by Tailored Management, a professional employment organization, and was assigned to work at Liebert Corporation. *Id.* at ¶ 1. The

plaintiff was injured when a metal flight bar fell on his head, and he sued Liebert for negligence. *Id.* The trial court granted Liebert summary judgment based upon the loaned-servant doctrine. *Id.* On appeal, the Tenth District Court of Appeals reversed, finding an issue of fact existed as to who had the right to control and supervision of the plaintiff given the express language of the contract between Tailored and Liebert. *Id.* at ¶ 16. The language in that contract expressly provided that "Tailored retain[ed] all rights of supervision and control of Tailored Associates" and that "Tailored Associates shall at all times be under the supervision and control of Tailored, and shall not be under the direct control of Client [Liebert]." *Id.* at ¶ 9.

{¶ 27} The contract in *Sellers* is diametrically different than the contract between Accurate and AMO. Unlike in *Sellers*, the November 25, 2015 Agreement executed by Accurate and AMO provided that AMO was "solely responsible for management relating to the day-to-day supervision of Accurate Associates," including Crew. The contract further specified that AMO was responsible for providing "safety and job specific training" of Accurate Associates, which included Crew. The fact that the contract provided that Accurate retained responsibility for administrative human resources functions related to Crew's employment does not mean Crew was acting under Accurate's control at the time of his injury. *See Cowan v. Interdyne Corp.*, 3d Dist. Allen No. 1-12-26, 2013-Ohio-642, ¶ 17. "Whether a loaned servant is a customer's employee depends on who had the right to manage the manner or means of day-to-day control over the employee, not who was responsible for administrative human resource matters." *Id.* Accurate's right to perform safety inspections, require the use of certain safety gear, manage workers' compensation claims, and keep tax and payroll records did not involve day-to-day control over the manner or means in which Crew completed his tasks. *See id.* at ¶ 26.

{¶ 28} The November 25, 2015 Agreement unambiguously placed the responsibility

for the day-to-day control of Crew upon AMO. Additionally, deposition testimony established that AMO trained, directed, and controlled Crew's activities as they related to his operation of the stand-up forklift. Therefore, for purposes of workers' compensation law, Crew was a loaned servant and employee of AMO at the time of his injury.

**Workers' Compensation Premiums Paid**

{¶ 29} Crew argues that even if he is considered an employee of AMO, AMO is not entitled to the immunity provided by R.C. 4123.74 because AMO failed to present evidence that it paid premiums into the state insurance fund to provide coverage for him, as a temporary employee. Rather, Crew contends AMO is a "self-insuring employer" who only provides workers' compensation benefits for its own full-time employees, and not for temporary employees retained through AMO's contract with Accurate.

{¶ 30} Crew's arguments were recently addressed and rejected in *Thomas v. PSC Metals, Inc.*, 8th Dist. Cuyahoga No. 106084, 2018-Ohio-1630. There, the court considered whether a temporary employer, PSC, was entitled to immunity from a negligence suit brought by an injured "loaned" employee, Thomas, under R.C. 4123.74 where the workers' compensation insurance was provided by the general employer, Callos. *Id.* at ¶ 21-33. The Eighth District determined that the temporary employer was entitled to immunity, holding that "[a]n employer can show compliance with Ohio's workers' compensation statutes by obtaining certification from the Industrial Commission *or by showing that the injured employee received workers' compensation benefits.*" (Emphasis added.) *Id.* at ¶ 21. "A customer of a staffing agency may pay the workers' compensation premiums either directly or indirectly to qualify for immunity under R.C. 4123.74." *Id.*, citing *Foran v. Fisher Foods, Inc.*, 17 Ohio St.3d 193, 194 (1985).

{¶ 31} In rejecting the argument that the temporary employer had to separately provide the temporary employee with workers' compensation coverage to be entitled to

immunity, the court stated, in relevant part, as follows:

> Thomas argues that to obtain immunity, PSC had to pay workers' compensation premiums separate from those paid by Callos. Ohio appellate decisions, however, show that *for purposes of immunity, it does not matter who – the customer-employer or the temporary staffing agency – pays the workers' compensation premiums.* * * * "[F]or an employer of a temporary agency to obtain immunity from a negligence suit, *someone* must pay the workers' compensation premiums and some evidence of that must be before the court. * * * [*Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 306 (6th Dist.1999)]. * * * [B]ecause it was "undisputed that appellant obtained workers' compensation benefits[,]" it was "reasonable to infer that someone * * * paid workers" compensation premiums for appellant[.]" *Id.*

(Emphasis added.) *Id.* at ¶ 22. The court recognized that "'both the employer and temporary agency are entitled to immunity when the workers' compensation premiums are paid.'" *Id.* at ¶ 23, quoting *Hornyak*, 2016-Ohio-8489 at ¶ 18.

{¶ 32} In the present case, Crew does not deny that his injury was covered by workers' compensation or that he received workers' compensation benefits from OBWC. The November 25, 2015 Agreement between Accurate and AMO specified that Accurate was responsible for providing workers' compensation coverage for all assigned Accurate employees. AMO indirectly paid for the workers' compensation coverage, as evidenced by both Snow's and Bowlin's testimony that workers' compensation was included within the "markup" fee AMO paid to Accurate for obtaining the services of temporary employees.[3]

{¶ 33} Accordingly, given the evidence submitted by AMO in support of its motion for summary judgment, we find that AMO has demonstrated that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Based on the evidence

---

3. Snow specifically testified that AMO "through markups, pay[s] for Workers' Compensation insurance through that agency [Accurate]. And in that situation, the injured team member would contact the agency for direction on their medical bills or the status of their claim." Bowlin's testimony corroborated Snow's testimony. Bowlin indicated that the "markup" charge pays for "background checks, the drug screens, insurance, Workers' Comp, [and] taxes."

submitted, we find that a reasonable trier of fact could only come to one conclusion: for purposes of workers' compensation under R.C. 4123.35 and 4123.74, Crew was an employee of AMO and AMO is immune from Crew's negligence suit as workers' compensation premiums where paid on behalf of Crew. The trial court did not err in granting AMO summary judgment. Accordingly, we overrule Crew's sole assignment of error and affirm the judgment of the trial court.

{¶ 34} Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.